312 So.2d 818 (1975)
Concetta REA and Frank Rea, Her Husband, Appellants,
v.
LEADERSHIP HOUSING, INC., Appellee.
No. 74-612.
District Court of Appeal of Florida, Fourth District.
May 16, 1975.
Rehearing Denied June 12, 1975.
*819 James W. Dawson of Fazio & Dawson, Fort Lauderdale, for appellants.
Frank E. Maloney, Jr. and Robert D. McIntosh of Fleming, O'Bryan & Fleming, Fort Lauderdale, for appellee.
MAGER, Judge.
This is an appeal by Concetta Rea and Frank Rea, her husband, plaintiffs below, from a final summary judgment entered in favor of Leadership Housing, Inc., defendant below.
Plaintiffs filed a complaint for damages against defendant for injuries suffered by plaintiff Concetta Rea resulting from her stepping or falling into a hole in the driveway leading to her home. The complaint contained multiple counts and sought recovery based upon defendant's alleged negligent installation of the driveway and based upon defendant's alleged breach of express or implied warranty by failing to provide a driveway reasonably safe for its intended use.
The facts as contained in the pleadings and depositions of the plaintiffs reflected that plaintiff Frank Rea and his wife, Concetta Rea, purchased a new residence in Tamarac, Florida, taking possession on or about October 31, 1972. The plaintiffs moved into the home in question on November 7, 1972, and discovered that the driveway which had been covered by a pile of debris had two large holes. Plaintiffs alleged and asserted that they had notified the defendant of the holes in the driveway the day after discovery; that various complaints were made thereafter; and that defendant promised to repair the holes.
The facts reflect that there were no sidewalks leading from the street to the house and that the only path from the front door to the street (and vice versa) was the driveway with a cement patio from the front door leading to the driveway.
On January 26, 1973, plaintiff Concetta Rea went bicycle riding for the first time since moving to her home. Upon her return, at twilight, she proceeded up the driveway and attempted to stop short of the bigger of the two holes which was on her left. In attempting to do so she placed her right foot on the ground; apparently her right foot touched the edge of the right hole causing her to step into the hole and as a result she fell down and broke her hip.
The facts reflect that Mrs. Rea was fully aware of the existence of two holes and that there was enough room to park a car on the driveway without going into either of the holes and enough room to negotiate a bicycle up the driveway also without going into either one of the holes.
The defendant filed an answer denying each and every allegation and raised the affirmative defenses of assumption of the *820 risk, sole negligence, and contributory negligence of the plaintiff. Subsequently defendant filed a motion for summary judgment alleging that there was no genuine issue as to any material facts and that the defendant was entitled to a final judgment as a matter of law.
Our review of the pleadings and depositions measured against the basic principles applicable to summary judgment leads us to the conclusion that there were genuinely triable issues of fact precluding summary disposition.
As a general proposition whether a plaintiff has assumed the risk, is guilty of contributory negligence or whether the plaintiff's sole negligence was the proximate cause of the injury ordinarily presents jury questions precluding summary judgment. 30 Fla.Jur., Summary Judgment, sec. 6; Jones v. Crews, Fla.App. 1967, 204 So.2d 24; Lora v. Maule Industries, Inc., Fla.App. 1970, 235 So.2d 743; see also McRae v. Winn Dixie Stores, Inc., Fla.App. 1969, 227 So.2d 214; Railway Express Agency, Inc. v. Garland, Fla.App. 1972, 269 So.2d 708; Veiga v. South Carolina Insurance Company, Fla.App. 1973, 274 So.2d 10.
Specifically, the factual matters contained in the pleadings and depositions reflect the existence of a triable issue with respect to plaintiff's assumption of the risk precluding summary disposition. Veiga v. South Carolina Insurance Company, supra. The two essential elements of the doctrine of assumption of the risk are (1) voluntariness of exposure to danger and (2) knowledge and appreciation of the danger. Jones v. Crews, supra and Lora v. Maule Industries, Inc., supra. In determining whether a plaintiff knows, understands and appreciates the risk a subjective test or standard must be utilized, i.e., what the particular plaintiff in fact sees, knows, understands and appreciates. Byers v. Gunn, Fla. 1955, 81 So.2d 723; Restatement of Torts, 2d, sec. 496D.
It would appear that the record reflects a material issue of fact as to whether plaintiff's use of the driveway was free and voluntary and whether plaintiff knew and understood the risk she was incurring by driving her bicycle up the driveway near the two holes. See Conroy v. Briley, Fla.App. 1966, 191 So.2d 601; but see Perlman v. Kraemer, Fla.App. 1958, 104 So.2d 609. Moreover, since the accident occurred along an area (driveway) which apparently was the usual (and only) means of egress and ingress to the front door and would reasonably be the pathway through which a bicycle would travel when going to and from the house, there is a material factual question as to whether plaintiff's acceptance of the risk was, indeed, voluntary; and whether defendant's alleged negligent conduct left the plaintiff with no reasonable alternative choice or course of conduct. Conroy v. Briley, supra; see also Restatement of Torts, 2d, sec. 496E.
Additionally, whether plaintiff's conduct constituted contributory negligence on her part either in relation to the claim of negligent construction or breach of implied warranty was a jury question, as was the issue of the sole negligence of plaintiff.
Quite apart from the propriety of the entry of a summary judgment (because of the material issues of fact raised by the pleadings, depositions and affirmative defenses) is the proposition that even if the pleadings, depositions, etc. conclusively demonstrate an assumption of the risk or contributory negligence a plaintiff would not be barred from recovery as a matter of law. An examination of the summary final judgment reflects an apparent determination by the trial court that assumption of the risk and contributory negligence constitute a complete bar to plaintiff's recovery in her actions for negligence and implied warranty. The cases cited by the trial court[1] in support of its summary final *821 judgment relate solely to implied warranty and do not speak to the applicability of a defense of assumption of the risk (as a complete bar) in a purely tort action.
The recent decision of the Supreme Court of Florida in Hoffman v. Jones, Fla. 1973, 280 So.2d 431 (affirming this court's decision in Jones v. Hoffman, Fla. App. 1973, 272 So.2d 529), has laid to rest the efficacy of contributory negligence as a complete bar to recovery in a tort action. The court in Hoffman announced "that a plaintiff in an action based on negligence will no longer be denied any recovery because of his contributory negligence"; instead, if a plaintiff and a defendant are both at fault, the doctrine of comparative negligence would be applicable. The court, however, declined to consider what effect the adoption of comparative negligence would have on the defense of assumption of the risk.
From our examination of the cases discussing assumption of the risk and contributory negligence and from our analysis of the underlying rationale of Hoffman v. Jones, supra, we conclude that the defense of assumption of the risk does not constitute a complete bar to a plaintiff's recovery. A plaintiff should not be denied recovery solely because of assumption of the risk. Instead, assumption of the risk ought to be treated as a special form of contributory negligence and merged with contributory negligence in light of the adoption of comparative negligence.[2]
If the legal cause of the injury to the plaintiff is a combination of the defendant's negligence and the plaintiff's conduct (whether denominated as contributory negligence or assumption of the risk) a plaintiff's right of recovery is not defeated. The amount of recovery would be in proportion to the degree of the negligence of both parties. Hoffman v. Jones, supra, at p. 438.
We are not unmindful of the theoretical distinction between contributory negligence and assumption of the risk. Oftentimes it is a distinction without a difference. In light of the comparative negligence concept, it becomes an unrealistic distinction as well.
In Byers v. Gunn, supra, Mr. Justice Thornal, in discussing the difference between contributory negligence and assumption of the risk, stated as follows:
"At times the line of demarcation between contributory negligence and assumption of risk is exceedingly difficult to define. A generally safe rule to follow is that the latter involves a choice made more or less deliberately and negatives liability. Contributory negligence, on the other hand, implies the failure of the plaintiff to exercise due care. Some courts have stated that assumption of *822 risk is a mental condition of willingness, whereas contributory negligence is more a matter of conduct."
The theoretical distinction between the two defenses is that assumption of the risk rests upon the voluntary consent (and conduct) of the plaintiff to encounter the risk and take his chances; whereas, contributory negligence rests upon the plaintiff's failure to exercise the care of a reasonable man for his own protection. Restatement, 2d, Assumption of the Risk, sec. 496A. While a subjective standard is applied to assumption of the risk in determining whether the plaintiff knows, understand and appreciates the risk, an objective standard is applied to contributory negligence; the plaintiff is required to have the knowledge, understanding and judgment of the standard of a reasonable man. Restatement of Torts, 2d, supra, sec. 496A.
The practical problem, however, is that in the great majority of cases these two defenses tend to overlap so that oftentimes these defenses are either used interchangeably or often have reference to the same conduct. For example, where a plaintiff voluntarily consents to take a chance or assume a risk and in doing so acts "unreasonably" then such conduct would constitute both assumption of the risk and contributory negligence since the element of unreasonable conduct is essential to a finding of contributory negligence. See Annotation: Distinction between assumption of risk and contributory negligence, 82 A.L.R.2d 1218, sections 6-9. While there is a theoretical distinction, pragmatically, the distinction loses any vitality as a result of Hoffman v. Jones.
When this court and the Supreme Court hastened the demise of the absolute bar-theory of contributory negligence, such action was taken with the recognition that comparative negligence was "simply a more equitable system of determining liability and a more socially desirable method of loss distribution", Hoffman v. Jones, supra, at p. 437. Consequently, when the conduct of more than one person contributes to the occurrence of the accident and injury, whether the conduct of one of the actors is "voluntary" or "unreasonable" should make little difference if such conduct is indeed "negligent"; "each should pay the proportion of the total damages he has caused the other party", Hoffman v. Jones, supra, at p. 437.
The defense of assumption of the risk is no less "a primitive device of achieving justice between parties who are both at fault" than was contributory negligence. It should meet the same fate as contributory negligence and not constitute a complete bar to recovery where comparative negligence is the measuring standard for recovery. See Connolly v. Steakley, Fla. 1967, 197 So.2d 524.
As Mr. Justice Oliver Wendell Holmes observed:
"It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past." Holmes, The Path of the Law, 10 Harv. L.Rev. 457, 469 (1897).
The ludicrousness of perpetuating assumption of the risk as a complete bar to recovery where comparative negligence reigns, while at the same time recognizing that contributory negligence no longer completely bars recovery is, perhaps, poignantly illustrated by the following example: a plaintiff passenger who sits passively while the intoxicated driver recklessly causes an accident injuring the plaintiff is completely barred from suing any potential defendant because he (plaintiff) has assumed the risk; but the same plaintiff who actively encourages such reckless conduct may be guilty of contributory negligence and entitled to partial recovery. See: Contributory Negligence and Assumption of the Risk  the Case for Their Merger, 56 Minnesota L.Rev. 47; Saxton v. Rose 1947, 201 Miss. 814, 29 So.2d 646.
*823 While the foregoing example may be somewhat extreme nevertheless quite apart from this hypothetical illustration is the view that the purpose of the comparative negligence concept would be frustrated if assumption of the risk continues to operate as a complete bar to recovery. A plaintiff whose conduct is unreasonable may be guilty of contributory negligence but is not barred from recovery because of the doctrine of comparative negligence; whereas, notwithstanding the loss distribution concept, a reasonable plaintiff would be barred from recovery because his conduct can be labeled as assumption of the risk. It was aptly pointed out in the Minnesota Law Review article, supra, that the key concern should be whether the plaintiff exercised reasonable care; if he did, he should be allowed to recover; if he did not, the comparative negligence principle should be applicable and recovery diminished in proportion to the plaintiff's own negligence. 56 Minn.L.R., supra, p. 58.
The approach we have taken is similar to the position adopted by the Supreme Courts of Minnesota and Washington which have held, in essence, that the effect of the comparative negligence principle is to completely abrogate the assumption of risk doctrine as known and applied heretofore; assumption of the risk is but a phase of contributory negligence. Lyons v. Redding Construction Company, 1973, 83 Wash.2d 86, 515 P.2d 821; Springrose v. Willmore, 1971, 292 Minn. 23, 192 N.W.2d 826. As the Supreme Courts of Washington and Minnesota observed:
"... Adoption of the standard of comparative negligence is necessarily accompanied by a more flexible weighing of the relative fault attributable to each party. A concomitant effect of this more delicate apportionment of damages will be the elimination of the need for the assumption of the risk doctrine. Thus, the calculus of balancing the relative measurements of fault inevitably incorporates the degree to which the plaintiff assumed the risk... ." (515 P.2d 826)
* * * * * *
"... Although this departure from precedent is not compelled by the legislative enactment, the apportionment of loss between blameworthy plaintiffs and defendants is in harmony with its manifest determination of public policy regarding tort reparation." (192 N.W.2d 828)
In reaching this decision we recognize the contrary position adopted by the Third District in Dorta v. Blackburn, Fla.App. 1974, 302 So.2d 450. Most respectfully, we feel that the decision in Dorta is inconsistent with the underlying rationale of loss distribution in proportion to fault as espoused by the Supreme Court (and this court) in Hoffman v. Jones. Unquestionably our decision clearly and directly conflicts with Dorta.
In summary, we therefore conclude that (1) genuine issues of material fact exist with respect to the affirmative defenses of assumption of the risk, contributory negligence and sole negligence precluding the entry of summary judgment; (2) in light of the decision in Hoffman v. Jones assumption of the risk merges with and becomes a phase of comparative negligence;[3] (3) assumption of the risk is not a complete bar to plaintiff's recovery.
Accordingly, the summary final judgment is reversed and the cause remanded for further proceedings consistent herewith.
CROSS and DOWNEY, JJ., concur.
NOTES
[1] Coleman v. American Universal of Florida, Inc., Fla.App. 1972, 264 So.2d 451; Matthews v. Lawnlite Company, Fla. 1956, 88 So.2d 299; Fletcher Co. v. Melroe Manufacturing Co., Fla.App. 1970, 238 So.2d 142, cert. den. Fla., 242 So.2d 463. It should be observed that while the court in Coleman v. American Universal of Florida, Inc., supra, held that contributory negligence was a defense in an action for breach of implied warranty, there is no suggestion or intimation whatsoever that contributory negligence would constitute a complete bar to recovery in an action predicated upon a breach of implied warranty. The only significance of the Coleman decision is the determination that contributory negligence (a tortious defense) may be raised in what appears to be an action ex contractu (implied warranty).
[2] In announcing the adoption of comparative negligence the Supreme Court was careful to make the following observation: "This rule should not be construed so as to entitle a person to recover for damage in a case where the proof shows that the defendant could not by the exercise of due care have prevented the injury, or where the defendant's negligence was not a legal cause of the damage. Stated differently, there can be no apportionment of negligence where the negligence of the defendant is not directly a legal cause of the result complained of by the plaintiff. A plaintiff is barred from recovering damages for loss or injury caused by the negligence of another only when the plaintiff's negligence is the sole legal cause of the damage, or the negligence of the plaintiff and some person or persons other than the defendant or defendants was the sole legal cause of the damage." (280 So.2d 431, 438)
[3] Recognition that assumption of the risk merges with and becomes a phase of contributory negligence relates primarily to those situations involving the duties arising simply from negligent conduct as opposed to those cases arising out of a contractual master-servant relationship. Cf. Fowler v. Liquid Carbonic Corporation, Fla.App. 1960, 121 So.2d 49.